JAXZANN M. RIGGS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Riggs
Docket No. 5559-90
United States Tax Court
T.C. Memo 1992-323; 1992 Tax Ct. Memo LEXIS 350; 63 T.C.M. (CCH) 3107; June 8, 1992, Filed *350 Decision will be entered for respondent. Michael J. Abramovitz, for petitioner. Martin B. Kaye and Michael J. Cooper, for respondent. KORNER
KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: By statutory notice of deficiency dated January 11, 1990, respondent determined deficiencies in petitioner's 1985, 1986, and 1987 Federal income tax in the amounts of $ 4,408, $ 5,796, and $ 3,682, respectively. The issue for decision is whether respondent erred in determining that petitioner was not entitled to deduct the pass-through of losses from an S Corporation for all 3 years at issue, nor to an investment tax credit in 1985, because petitioner was not "at risk". FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Lakewood, Colorado, at the time she filed her petitioner herein. During the years at issue, petitioner owned 50 percent of the issued and outstanding stock of a Colorado corporation called The Mortgage Network (hereinafter TMN) and was its president. The other 50-percent shareholder of TMN was James Russell (Russell). TMN *351 was incorporated on July 25, 1985, and petitioner and Russell elected S Corporation status for it at that time. During the years at issue, TMN was in the business of lending money for residential mortgage loans. Petitioner was actively involved in the business and earned a salary originally based solely on commissions. At some point in time, which the record does not disclose, TMN began paying petitioner a minimal salary because she was unable to create sufficient commissions. In 1985 and 1986, petitioner and Russell resided together in a condominium owned by Russell. Russell was also the sole shareholder and president of Computer Services, Inc. (CSI), a Colorado corporation. [1]
Petitioner's capital contributions or investment in TMN were based on the following transfers: TMN
Date
Amount
Type
Shares Received
7/2/85
$ 55,000
Cash   5,500
3/12/86
82,500
Cash   8,250
3/12/86
37,500
Equipment
3,750
10/30/86
37,500
Equipment
3,750
*352 The cash and equipment transferred to TMN were obtained by petitioner through loans from CSI, for which she pledged her stock in TMN as collateral. The two cash transfers were in the form of checks from CSI, payable to petitioner, which were endorsed by petitioner over to TMN. In connection with these transfers, petitioner executed promissory notes calling for payment of interest and principal to CSI on various dates during the years at issue. The two transfers of equipment represent conveyances of computer equipment by CSI to petitioner, who then immediately conveyed that equipment to TMN. The record contains a promissory note, similar to those noted above, from petitioner to CSI in connection with the first transfer of computer equipment. However, petitioner was unable to produce any promissory note for the second equipment conveyance. During the years at issue, TMN was a nonsupervised mortgagee subject to United States Department of Housing and Urban Development (HUD) procedures. HUD regulations required TMN to maintain a net worth of at least $ 250,000 in acceptable assets. Officer and shareholder notes were not considered acceptable assets for purposes of HUD's net worth *353 requirement. The $ 82,500 transfer by petitioner on March 12, 1986, was made in order to meet HUD's net worth requirement. On or about March 27, 1986, TMN issued a check for $ 82,500 payable to petitioner because HUD's net worth requirement had been met and the capitalization was no longer needed by TMN. Petitioner endorsed the check and deposited it into CSI's account. Her promissory note to CSI for the $ 82,500 was marked paid in full. Because of her weak financial position, petitioner believed it would have been futile for her to have attempted to borrow from outside lenders the amounts that she obtained from CSI. Throughout the years at issue, petitioner did not have the financial capability to satisfy her notes to CSI. Both petitioner and Russell anticipated that petitioner would satisfy her notes to CSI with amounts earned through TMN. It was also anticipated that the notes would be rolled over for approximately 5 years through the use of renewal notes to enable TMN to get through its startup phase and become profitable. The record contains one such renewal note relating to the July 25, 1985, cash transfer. During the years at issue, however, petitioner made no payments *354 of interest or principal to CSI other than the $ 82,500 noted above. Petitioner deducted the following amounts as her allocable share of losses from TMN: Year
Amount
1985
$ 17,234
1986
81,442
1987
15,892
Petitioner also took a $ 686 investment tax credit on her 1985 return. In her notice of deficiency respondent disallowed the deductions and the investment tax credit. OPINION The issue for decision is whether respondent erred in determining that petitioner had no amounts at risk with respect to TMN. Petitioner bears the burden of proving that respondent's determination was in error. Rule 142(a); . [2] Respondent does not question the validity of TMN, nor question the amount of losses that it sustained during any of the years at issue. We discuss the deductibility of the pass-through of TMN's losses and the entitlement to the investment tax credit separately.
*355 I. Pass-Through of TMN's Losses
When a taxpayer such as TMN engages in an activity to which section 465 applies, any loss from the activity is allowed only to the extent that the taxpayer is "at risk" for such activity at the end of the year. Sec. 465(a)(1) and (c)(3). [3] A taxpayer is considered "at risk" for the amount of money, the adjusted basis of any property contributed to the activity, and also for certain amounts borrowed with respect to the activity. Sec. 465(b)(1). Although petitioner transferred cash *356 and equipment to TMN in the instant matter, she will be considered "at risk" only to the extent that she can satisfy the requirements of section 465(b)(2) for borrowed amounts. Sec. 465(b)(1)(B). In this regard, amounts borrowed with respect to an activity include amounts borrowed and then contributed to the activity. See . A taxpayer is considered at risk with respect to amounts borrowed for use in an activity to the extent that she: (A) is personally liable for the repayment of such amounts, or (B) has pledged property, other than property used in such activity, as security for such borrowed amount (to the extent of the net fair market value of the taxpayer's interest in such property). No property shall be taken into account as security if such property is directly or indirectly financed by indebtedness which is secured by property described in paragraph (1). [Sec. 465(b)(2).] Petitioner claims that she was at risk for all of the amounts she contributed to TMN because her obligation to repay CSI was substantial, unlimited, and fully recourse. On the other hand, respondent contends that petitioner was not *357 at risk because she would not have to repay any amounts to CSI until and unless TMN was successful. We agree with respondent. A taxpayer is not considered at risk for amounts borrowed on a nonrecourse basis. Sec. 465(b)(4). S. Rept. 94-938, at 49 (1976), 1976-3 C.B. (Vol. 3) 49, 87 (discussing sec. 465), states: if the taxpayer borrows money to contribute to the activity and the lender's recourse is either the taxpayer's interest in the activity or property used in the activity, the amount of the proceeds of the borrowing are to be considered amounts financed on a nonrecourse basis and do not increase the taxpayer's amount at risk. For tax purposes, the substance rather than the form of a transaction is controlling. . Even though a note is recourse on its face, a taxpayer will not be considered at risk if in substance she is not personally liable. , affd. sub nom. . Although in form petitioner may have been personally liable on the notes, we believe that *358 in substance CSI's recourse was limited to petitioner's interest in TMN. Petitioner concedes that, during the years at issue, she was financially incapable of satisfying her notes to CSI. Additionally, the record is clear that repayment by petitioner to CSI was totally contingent on the success or failure of TMN. [4] In this regard, both petitioner and Russell testified that the loans were to be repaid with income earned by petitioner in TMN. Further, petitioner was not expected to repay any amounts until TMN became profitable and was able to pay her a larger salary. The fact that petitioner repaid the $ 82,500 note, with what we believe was a dividend from TMN in a questionable transaction, does not alter this result. We are not persuaded that petitioner was personally liable on these loans during any of the years at issue. *359 We hold that the amounts borrowed by petitioner from CSI are to be considered amounts financed on a nonrecourse basis which do not increase petitioner's amount at risk under section 465(b)(1). Accordingly, we sustain respondent's determination that petitioner was not entitled to deduct the pass-through of losses from TMN because she had no amounts at risk. II. Investment Tax Credit
Petitioner claimed a $ 686 investment tax credit on her 1985 return. This credit was petitioner's allocable share of a credit claimed by TMN, apparently pursuant to section 46. Petitioner did not discuss this credit on brief. We note that petitioner's amount eligible for the credit under section 46 cannot exceed the amount petitioner was at risk. Sec. 46(c)(8)(D). We hold that petitioner has failed to meet her burden of proof with respect to this credit. Accordingly, respondent's determination that petitioner was not entitled to this credit because she was not at risk is sustained. Decision will be entered for respondent. Footnotes
1. The record also refers to CSI as Computer Services Corporation or CSC.↩
2. All statutory references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. In her petition, petitioner alleged that the activity of TMN was not one of the activities enumerated in sec. 465(c)(1). Petitioner did not address this issue on brief; we therefore deem it abandoned. , affg. . During the years at issue, the at-risk provisions applied, inter alia, to each activity engaged in by a taxpayer in carrying on a trade or business. Sec. 465(c)(3).↩
4. Testimony was received that petitioner could receive a substantial inheritance in 10 to 15 years that could be used to satisfy the notes. Even assuming, arguendo, that this testimony was not self-serving, it would still be a remote contingency that cannot serve to make petitioner at risk during the years at issue. See .↩